JOHN H. LEE v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.[1]

April 26, 1897.

Nos. 10,362—(222).[2]

**Railway Crossing—Negligence.**

In an action to recover for personal injuries received by plaintiff, and for damages done to his property, in a collision between his horses and wagon and one of defendant's locomotives, it is *held* .that the evidence as to defendant's negligence was insufficient to support the verdict in plaintiff's favor.

Appeal by defendant from an order of the district court for Jackson county, P. E. Brown, J., denying a motion for a new trial after a verdict for $1,800. Reversed.

*Lorin Cray*, for appellant.
*T. J. Knox* and *J. G. Redding*, for respondent.

COLLINS, J. Action to recover for personal injuries received by plaintiff, and for damage done to his property, in a daylight collision, at a street crossing ·in the village of Windom, between the locomotive of one of defendant's passenger trains and plaintiff's horses and wagon. The plaintiff was driving the horses at the time, and the negligence on the part of the defendant upon which he relies is alleged to have been an omission to sound the whistle or ring the bell of the

locomotive as the train approached the crossing; that the street was crossed at an improper rate of speed because of its icy condition at that particular time; and also that the engineer was negligent in not stopping the train in time to avert the accident upon discovering that plaintiff was in a perilous position. As the verdict in plaintiff's favor necessarily included a finding that defendant was negligent in one or more of these particulars, we will consider the claim made by the defendant's attorney that there was no evidence upon which the jury was justified in declaring that defendant was negligent in any respect.

The train in question was upon its regular time, was approaching from the south, and the track crossed the street at right angles. Defendant's depot, at which this train always stopped, was about 50 feet from the north of the street. At the time of the collision two or more busses were at the depot and a number of people were upon the platform, nearly all of whom witnessed the affair. Taking up the evidence of plaintiff's witnesses as to the failure to sound the whistle and ring the bell as the train came up, one Solum testified that he did not hear either whistle or bell. Upon cross-examination he admitted that the whistle might have been sounded at the usual place, about 80 rods south of the depot, near a bridge, and not have been heard by him. And as to the ringing of the bell Solum did not pretend to know anything about it until after the locomotive had crossed the street, and was opposite the depot. Another witness, Thomas, had driven into the village with a load of wheat, and when the locomotive struck the plaintiff's wagon was waiting for an opportunity to unload at the elevator. He heard the whistle, and also the rumbling of the train itself. He testified that his horses occupied his attention, and also that he did not hear a bell ring. That he did not intend to positively assert that the bell did not ring is manifest from a part of the cross-examination. He was asked: "Now, do you mean, Mr. Thomas, anything more than to say that you didn't hear this bell ring?" and answered: "I didn't hear any bell ring, no, sir." And again: "The bell could have been ringing while you were driving along there and your horses attracting your attention, as they were, and you not have heard it, could it not?" The answer was: "It might, but I was standing still when this thing happened." Another

witness, Tollefson, testified that he did not hear a whistle or a bell, but upon further examination it appeared that he was not present when the accident occurred, knew nothing of it until afterwards, nor did he know when the train came in that day.

We have thus stated all of the testimony in behalf of the plaintiff, except such as he gave himself, tending to show that there was any failure to sound the whistle or ring the bell as the train approached the crossing. In his own behalf plaintiff testified that before he came to the top of the hill, and at the top, about 300 feet from the crossing, he both looked and listened for a train, but did not see or hear one. From this point the track was in plain sight for some distance south of the bridge we have mentioned, and the train must have been in the vicinity of the bridge when plaintiff was at the brow of the hill. Taking the rate of speed at which the train was running and the rate at which plaintiff drove down the hill, this must have been about the time the whistle was sounded at the bridge. He also testified that while driving down the hill he took pains to look for a train, and to listen for whistle and bell, but in this immediate connection stated that, "My time was most taken up in taking care of my horses and trying to keep my wagon straight, from going sideways on account of the ice there." And again, when asked, "Could you see anything of a train, after you had started down hill, in any event?" he answered "No, sir; and I had my time taken up with the team and wagon and show case I had on top" of the load.

For the purpose of showing that the whistle was sounded at or near the bridge, and that the bell was rung before and at the time the train came to the crossing, defendant called a large number of witnesses; the engineer and fireman being among them. Nearly all of these witnesses were persons at and about the depot when the train came in, not in defendant's employ. All testified positively that the train came up to the crossing at the usual rate of speed, "slowing up" as was necessary in order to stop at the depot, but a few feet distant; and that the bell was rung at intervals from the bridge for several rods before the street was reached, and until the collision occurred; while, as before stated, it was conclusively established that the whistle was sounded, for the station, at the usual place near the bridge. We need not give these witnesses' version of the manner in which plaintiff drove down the hill and upon the track, for that has no bear-

ing upon the question of defendant's negligence, and is immaterial, if the latter was not shown to be negligent.

From a careful examination of the evidence relative to the alleged omission to give the requisite signals, we are compelled to hold, taking into consideration the negative character of plaintiff's proofs; the absence of anything like positive evidence that the signals were not given; the fact that, although plaintiff was near enough to hear the whistle at the bridge, he did not; his admission that he was busily occupied with his team and the load as he descended the hill; the positive and convincing testimony of a large number of disinterested witnesses who were at and about the depot when the train came in that the whistle was sounded and the bell rung; the location of the crossing with reference to the depot; and the improbability in the assertion that this passenger train was run up to the depot platform without giving the customary warning;—that a finding that there was negligence in this respect was not supported by the evidence.

Another circumstance has some bearing when considering the force and value of the testimony given by plaintiff's witnesses as to the absence of signals. When this action was brought does not appear from the record, but it was not tried for more than four years after the accident. Certainly testimony of a negative character, very indefinite and unsatisfactory, as this was, cannot be regarded equally as convincing after such a lapse of time as it would be if given earlier.

Nor do we think that there was any evidence upon which to base a finding that the train crossed this street at an improper rate of speed. While one of plaintiff's witnesses put the rate of speed at from 18 to 25 miles an hour, and another at from 10 to 25, neither claimed that the train was running faster than usual. The fact is admitted that it stopped at the usual place opposite the depot building, and this could not have been done, according to the expert evidence produced by plaintiff himself, if the train had been running anywhere near the maximum rate of speed testified to by these witnesses. Another fact demonstrates this to a certainty, the plaintiff's wagon, when struck, instead of being thrown clear of the track, as it would have been if the train had been running rapidly, was carried along upon the front of the locomotive until it encountered a switch stand, which swept it clear. This shows conclusively that the train was, as testified to by defendant's witnesses, approaching the depot quite slowly.

It is argued that because of the icy condition of the hill and the street, especially that portion of the latter within defendant's right of way, the latter was chargeable with knowledge of the conditions, and was bound to exercise care proportionate to the increased hazard to the traveler upon the way. No authorities have been cited upon this proposition, and we are confident none can be found. The defendant was not responsible for the formation of ice upon the highway. It was not bound to remove it, and could not be called upon to reduce the rate of speed of its trains to meet the natural conditions, even if it had knowledge that they existed. Trains cannot be operated with reference to the amount of snow or ice, or the depth of mud, upon the intersecting highways.

Nor would the evidence justify a finding that the engineer was negligent in the management of his locomotive after seeing the plaintiff in a dangerous place. The latter was 30 or 40 feet from the track when he first saw the locomotive. It is a little difficult from the plaintiff's testimony to determine whether he intended to state that the locomotive was just emerging from behind the water tank at that time, say 50 feet from the point of collision, or was further south, in the neighborhood of 100 feet from the point just mentioned. And there is the same difficulty with reference to the engineer's testimony as to where he was when he first saw plaintiff. But whether the locomotive was 50 feet from the point of collision, or double that distance, when the engineer first discovered plaintiff, the expert evidence as to the distance within which the train could be stopped, with the equipment it had, would not justify the jury in concluding that the engineer was negligent in this respect.

We have not to consider the effect which should be given plaintiff's testimony as to the icy condition of the hill, and his inability to hold his team at all after he started to descend. The plaintiff testified that his horses were smooth shod, and because of the ice upon the roadway he could not stop anywhere on the hill, or upon that portion of the street between the foot of the hill and the railway track, from 50 to 75 feet, which, from the photographs, appears to have been nothing more than a slight descent towards the track, and really no part of the hill. If this was the fact, it is evident that the collision could not have been avoided by either whistle or bell, and that the omission to sound the one or ring the other was not the proximate cause

of the accident. The giving of signals which would have informed plaintiff of the near approach of the train would not have aided him in stopping his team, if the conditions were as he insists. This is evident from plaintiff's contention that, although 30 or 40 feet from the rails, he could not stop, after he saw the train, because of the ice which covered the ground at that place. And this is also a sufficient answer to the claim that defendant must be held liable because its water tank obstructed a view to the south and of trains approaching from that direction. If plaintiff's team could not have been stopped after leaving the top of the hill until after the tracks had been crossed because of the natural conditions we have referred to, a clear and uninterrupted view from that part of the street shut off by the tank would not have avoided the collision.

Nor have we considered the claim that plaintiff was guilty of contributory negligence which would prevent a recovery in any event. It is immaterial in the absence of adequate proof of defendant's negligence. We take occasion to say, however, that if plaintiff at the top of the hill looked, as he claimed, or if he looked at different points as he descended, there was no reason why he should not have seen the locomotive and cars. They were in sight in the valley below him. The cut in the street was not over three feet, and the only obstacles in a distance of 300 feet from the top of the hill to the crossing were five small structures, three thereof, including the water tank, being on the defendant's right of way, and within 100 feet of the track. The plaintiff knew that the train was coming, from the appearances at the depot; and the presence of these obstructions to the view, if they existed, should have made him more active and vigilant. Or if the fact was that he could not stop after starting down the hill, because of the natural conditions, and this fact brought about the collision, no responsibility for plaintiff's injury and loss could be fastened upon the company in the absence of proof that by proper management on the part of the engineer, after he discovered plaintiff's peril, the collision could have been averted.

Order reversed.